Kenneth OWENS-EL and Inmates and Future Residents of Allegheny County Jail, Plaintiffs,

v.

William ROBINSON and James Jennings, Defendants.

INMATES OF the ALLEGHENY COUNTY JAIL, Thomas Price Bey, Arthur Goslee, Robert Maloney, and Calvin Milligan on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Robert PEIRCE, Chairman, Allegheny County Board of Prison Inspectors and all other members of the Board, James Jennings, Warden Allegheny County Jail, and James Flaherty, Robert Peirce and Thomas Foerster, Commissioners for Allegheny County, Defendants.

Civ. A. Nos. 75–412, 76–743.

United States District Court,
W. D. Pennsylvania.

Oct. 11, 1978.

Jere Krakoff, Neighborhood Legal Services, Pittsburgh, Pa., for plaintiffs.

John G. Arch, Asst. County Sol., Allegheny County Law Dept., Pittsburgh, Pa., for defendants.

## OPINION, SUPPLEMENTAL FINDINGS OF FACT, AND FINAL ORDER

COHILL, District Judge.

### I.

#### History of the Case

Plaintiff Kenneth Owens-El is a former inmate of the Allegheny County Jail

("jail"), Pittsburgh, Pennsylvania. In 1975 he filed a *pro se* suit challenging the constitutionality of the conditions under which inmates of the jail were confined, seeking money damages and equitable relief.

In a separate action in 1976 Neighborhood Legal Services ("NLS") filed a class action suit on behalf of all jail inmates, past, present and future, petitioning for a declaratory judgment holding that the conditions of confinement at the jail were violative of certain constitutional rights of the inmates. The two cases were consolidated for trial and certified as a class action.

A six week non-jury trial ensued beginning August 15, 1977, at which time we received testimony from some 50 witnesses including experts in the fields of mental health, medicine, penology and hygiene, as well as that of many lay witnesses who, in one capacity or another, were familiar with conditions at the jail. On January 4, 1978, pursuant to Fed.R.Civ.P. 52, we issued Findings of Fact and Conclusions of Law in which we held that in many areas the inmates had, indeed, been deprived of their constitutional rights. The accompanying Order provided for the appointment of an expert to serve as a "Court Advisor" and to monitor the implementation of the requirements of the Order.

The Opinion, Findings of Fact and Conclusions of Law were reported under the designation *Owens-El v. Robinson* at 442 F.Supp. 1368 (D.C.1978). On February 21, 1978 we appointed a former federal warden and expert in penology, Arnold E. Pontesso, to be the Court Advisor. A copy of that Order is appended hereto as Appendix A.

Mr. Pontesso visited the jail in March and May, 1978, filing a written report with the court each time. He also met with the entire Allegheny County Board of Prison Inspectors (one of the named defendants), conferred many times with the warden and interviewed many jail personnel and inmates.

On August 17 and 18, 1978, a final hearing was held at which Mr. Pontesso testified as the court's witness and was cross-examined by all counsel and the *pro se* plaintiff, Kenneth Owens-El.

All parties were given the opportunity to submit a proposed final order. Extensive changes had been ordered at the jail in the Order of January 4, 1978, but it had been our intention to keep the case in such a posture that the Order could be amended and modified after receiving the expert opinion of the Court Advisor.

We have now had the benefit of that expertise and are prepared to make Supplemental Findings of Fact and a final decision and Order from which the parties may appeal. 28 U.S.C. § 1291.

II.

*Previous Findings of Fact, Conclusions of Law and Order*

The Findings of Fact and Conclusions of Law previously filed (442 F.Supp. 1368 (1978)) are incorporated by reference herein. For ease in reference we will enter an entire final Order here, even including those portions of the January 4, 1978 order which are not changed.

█ We do not deem it necessary to make additional Conclusions of Law in this Opinion, since we feel that sufficient Conclusions of Law were made at the time of the January 4, 1978 Order. At this point, we are content to rely on the inherent equitable powers of the court:

"Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte Mecklenburg Board of Education*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554, 566 (1971).

III.

*Guards*

The January 4, 1978 Order required two guards to be present in each occupied cell block at all times. Upon reconsideration we are satisfied that two guards are not required when the inmates have been locked

in their cells. The Order will be changed accordingly, but adequate records of job assignments will be required.

## IV.

### Cleanliness and Sanitation

There has been improvement in the cleanliness and sanitation at the jail, but there are not daily inspections of the cells by jail personnel to check for cleanliness, damage to paint and condition of plumbing and electrical fixtures.

Jail officials will have to prepare a written program setting forth the daily housekeeping procedure to be followed at the jail.

■ A person has not been designated to have primary responsibility for the cleanliness and sanitation at the jail. It is only when this responsibility is delegated to one person that the desired accountability for the sanitary conditions at the jail can be achieved. It would be most desirable to appoint to this position a person trained as a sanitation specialist, but we do not consider it to be within the purview of this court's authority to tell the county authorities whom to appoint to such a position. Nevertheless, it will be their obligation to appoint someone who can assume the responsibility for carrying out the mandates of this order insofar as the cleanliness and sanitation of the jail are concerned, and if necessary, hire a new employee for the position.

## V.

### Electrical and Plumbing Problems

■ There has been improvement in the maintenance of electrical fixtures and wiring at the jail, but the problem of obtaining electricians when needed remains. Although the Court Advisor recommended a full-time in-house electrician, we will stop short of ordering that; but it will be necessary to have an electrician available within twenty-four hours from the time one is requested by the warden or his designated representative. A plumber is presently assigned to the jail on a full-time basis. If this arrangement should be discontinued, a plumber will likewise have to be available within twenty-four hours of when requested.

## VI.

### Lighting

The January 4, 1978 Order required the defendants to install sufficient lighting in the cells to enable an inmate to read a newspaper. To make the standard more definitive, we will require that each cell be furnished with at least a 100 watt light bulb.

## VII.

### Distribution of Clothing, Bedding, Towels and Toilet Articles

It is difficult to understand why the distribution of bedding and towels should continue to present such a problem at the jail. Our Order required that each inmate be provided a clean towel, clean sheet and clean blanket which should be laundered once a week. Mr. Pontesso and others testified that while the situation has improved there are still occasions where there are shortages of bedding and towels.

Our Order also required that soap, toothbrush and toothpaste be furnished without charge to inmates having less than $2.00. It appears more feasible, and we will direct, that *all* incoming inmates be furnished these items without charge, since the jail personnel have not devised a systematic method of implementing the previous Order concerning those items.

It may be that someone with experience as a supply sergeant in the military service should be employed to oversee the distribution of these articles to incoming inmates and the collection of towels, bedding, etc. from departing inmates. Again, we will not direct the defendants to hire a person with particular training for this task, but we will direct the defendants to arrange the table of organization at the jail so that one person on each shift will have responsibility for seeing that this mandate is carried out

pursuant to a written procedure for such distribution.

There has been some confusion as to the definition of "adequate clothing" as used in our January 4, 1978 Order wherein we directed the defendants to furnish clothing to "each inmate who does not have adequate clothing when entering the jail . . . ." We will better define the clothing to be supplied in the Order. The defendants will be required to develop a written procedure for such distribution.

## VIII.

### Laundry

Our January 4, 1978 Order required that free laundry service be provided all inmates at least once a week. A chronic problem is that prisoners operating the laundry require "pay" from inmates desiring laundry service. This problem can be avoided by jail personnel developing a plan whereby the inmates do not have face-to-face contact with the laundry workers when they bring their wash to the laundry.

## IX.

### Rules and Regulations Manual

The inmates often do not know what they are entitled to. The Rules and Regulations Manual will be revised to reflect in clear and easy-to-understand language what items, supplies, and services the inmate is entitled to pursuant to the terms of the Order accompanying this Opinion. In addition some jail employee must be assigned the job of verbally informing inmates of what supplies and services they are entitled to.

## X.

### Restraints

Although since the January 4, 1978 Order a log has been kept relative to those inmates who were placed in restraints, it appears to be kept in almost *pro forma* fashion. Our Order will further refine the circumstances under which restraints may be used and the method of record keeping required.

## XI.

### Psychiatric Training for Nurses

It would appear that the requirement in our January 4, 1978 Order of one psychiatric nurse on duty at the jail at all times is not feasible. (Paragraph 14 of the January 4, 1978 Order). The defendants used their best efforts to employ such nurses without success. It also became apparent that the employment of psychiatric nurses would create morale and administrative problems with respect to other nurses at the jail who did not have such training. We will therefore modify the Order to require only that nurses employed at the jail be given a course in the handling of patients with mental problems.

## XII.

### Mail

It is not feasible to open all incoming mail in the presence of the inmate addressee, and the Order will be modified accordingly.

## XIII.

### Law Library

The defendants informally requested, and the plaintiffs' class, through its attorneys, informally consented to, reconsideration by the court of its Order pertaining to the contents of the law library ordered for the jail. We will modify the Order so as to reduce the number of case reporters which the defendants must provide, but increase the number of resource volumes required.

## XIV.

### Contact Visits

The attorneys for the plaintiffs have argued vigorously for "contact visits" between inmates and their families—that is visits where the inmates and families are within the physical presence of each other and can touch one another. Mr. Pontesso has likewise recommended this.

■ While we agree that contact visits would be more desirable, we do not believe that the lack of such visits in a jail setting deprives the inmates of a constitutional right. We would say, parenthetically, that we hope that the jail administration will attempt at least to provide such visits for inmates who are in the jail for extended periods of time.

## XV.

### Closing of this Case by the Court

We intend the Order accompanying this Opinion to be a final, appealable decision within the meaning of 28 U.S.C. § 1291. We will direct that Mr. Pontesso make an additional visit to the jail to be sure that the defendants are complying with the Order, but we do not intend to consider this again unless there is a petition for a Rule to Show Cause why. a party should not be held in contempt for failure to obey the terms and conditions of the Order accompanying this Opinion.

## APPENDIX A

### ORDER

Pursuant to the Opinion and Order of Court entered in this case on January 4, 1978, it is hereby ordered that Arnold E. Pontesso is appointed to serve as the Advisor of this Court under the following terms:

1. The Court Advisor shall have the authority and duty to monitor the implementation of the requirements of said decree of January 4, 1978. He shall review plans prepared by the defendants for implementation of the decree to ensure that they comport with the minimum standards set forth therein. The Court Advisor shall submit a comprehensive report to the Court describing progress made in the implementation of the decree and shall in addition, submit a comprehensive report detailing methods, procedures and programs which he deems appropriate to implement said decree. In addition to these functions, the Court Advisor shall perform such other services as the Court may assign.

2. The Court Advisor shall report his findings and recommendations no later than May 1, 1978, and shall submit such other reports as the Court may direct.

3. The Court Advisor shall have access to all areas and departments of the Allegheny County Jail, during all times of the day, and shall not be required to provide advance notice of his appearance in order to gain entry.

4. The Court Advisor shall be permitted to take photographs within all areas of the Allegheny County Jail.

5. The Court Advisor shall be permitted at reasonable times to interview inmates and institutional personnel and to inspect and photocopy institutional records.

6. With the approval of the Court, the Court Advisor may engage and consult appropriate specialists who shall be compensated by Allegheny County.

7. The Court Advisor shall be compensated by Allegheny County at the rate of $135 per day and shall be reimbursed for travel and other expenses necessarily incurred in the performance of his duties.

Entered this 21st day of February, 1978.

### ORDER

AND NOW, to-wit, this 11th day of October, 1978, after hearing testimony, arguments and careful study of the briefs filed, in accordance with the Findings of Fact and Conclusions of Law filed January 4, 1978 (442 F.Supp. 1368 (1978)), and pursuant to the Supplemental Findings of Fact and Conclusions of Law filed herewith, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the defendants herein, within the gambit and purview of their particular individual responsibilities, are directed as follows:

## I.

### Guards

1. There shall be no fewer than two guards stationed on a full time basis in each occupied cell block of the Allegheny County Jail ("jail") during the hours between 8:00

A.M. and evening lock-up of inmates daily. A separate daily log shall be maintained reflecting the names of the guards stationed in the occupied cell blocks, the specific cell blocks to which they were assigned and the particular hours each of the guards worked in the cell blocks.

## II.

### Cleanliness and Sanitation

2. All areas of the jail shall be maintained in a clean and sanitary condition. The jail administration shall establish an organized daily cleaning program which shall include daily inspections of the cells and ranges. In addition, the defendants shall ensure that all necessary cleaning materials and utensils are readily available to inmates as needed.

3. The defendants shall prepare and update from time to time a written plan describing in detail the operation of the jail's cleaning and sanitation program. Said plan shall be prepared by January 1, 1979.

4. A position of sanitation officer shall be established in the jail. The sanitation officer shall be adequately trained in sanitation procedures. His duties will include supervision of the jail's cleaning and sanitation program and enforcement of sanitation standards throughout the jail. The position shall be established immediately.

5. All living areas in the jail shall be kept adequately heated and ventilated.

6. A vigorous and ongoing insect and vermin extermination program shall be maintained.

7. No inmate shall be assigned to, or placed in a cell (including double lock), which is not clean or which is equipped with an unsanitary, inoperable or malfunctioning toilet, sink or cot, or where the cell is not illuminated by at least a 100 watt light bulb.

## III.

### Electrical and Plumbing

8. At least one electrician and one plumber shall be available within 24 hours after being called for by the Warden or his designated representative.

## IV.

### Lighting

9. All occupied cells shall be equipped with no less than 100 watt light bulbs.

## V.

### Clothing, Bedding, Towels and Toilet Articles

10. Upon admission to the jail each inmate shall be provided with a clean towel, clean sheet and clean blanket which shall be laundered at least once a week. In addition to the towel distributed to incoming inmates for use in their cells, there shall be a sufficient number of towels available for distribution in the jail's bathhouse for use there.

11. Each inmate who does not have clean and otherwise adequate clothing when entering the jail shall be furnished adequate clothing within 24 hours of admission if such clothing has not been furnished to the inmate within that time period by family or friends. Among the articles of clothing which the jail shall furnish to an inadequately clothed inmate are underwear, socks, shirts, and slacks. If at any time during the course of confinement an inmate becomes inadequately clothed, the jail shall furnish suitable clothing to such inmate upon request consisting of the articles described above.

12. Each inmate shall be furnished without charge, within 24 hours of admission to the jail, soap, a toothbrush and toothpaste. Thereafter, soap, toothbrushes and toothpaste shall be furnished, without charge, to indigent inmates as their need for additional soap, toothbrushes and toothpaste arises. For purposes of this Order, an inmate is indigent if he is admitted to the jail with less than $2.00 in his possession or if his most recent two week average balance in his account is less than $2.00.

13. The defendants shall prepare a written plan describing in detail the method for

distributing towels, sheets, blankets, clothing, toothbrushes, and toothpaste to the inmates. Said plan shall be prepared by January 1, 1979.

14. The position of one supply officer for each shift shall be established in the jail. The supply officer shall be responsible for supervising the distribution of the various articles detailed in paragraphs 10, 11 and 12 hereof.

## VI.

### Laundry

15. Free personal laundry service shall be provided to all inmates at least once a week. The defendants shall devise a system to prevent inmate laundry workers from charging a fee for laundry services. Said plan shall also describe in detail the operation of the laundry service and shall be prepared by January 1, 1979.

## VII.

### Telephones

16. Telephones shall be maintained in the jail in appropriate numbers and locations to enable inmates to have reasonable access to them without undue delay. The telephone system shall operate on a reverse charge basis, except for those calls which cannot be made on that basis (calls to the Public Defender's Officer, governmental agencies, private bail bondsmen, etc.) Where reverse charge calls are not possible, the jail shall provide a reasonable alternative, such as processing such calls through the counseling office or installing pay telephones. Telephone conversations may not be monitored by jail personnel.

## VIII.

### Rules and Regulation Manual

17. The Allegheny County Jail Resident Rules and Regulations Manual shall be updated from time to time to reflect current rules, procedures, and practices in the jail. The Manual shall be distributed to each inmate upon admission to the jail and shall specify with particularity all supplies and services that inmates are entitled to receive under this Order.

18. All incoming inmates shall be verbally informed of the supplies and services to which they are entitled under this Order. This shall be done no later than 48 hours after such inmate's admission to the jail and may be done as part of the jail's orientation procedure or in any other reasonable manner.

## IX.

### Use of Restraints, Cots with Holes, Delirium Tremens

19. The following procedures shall govern the use of restraints at the jail:

(i) Inmates requiring restraints will be housed only in a hospital setting and only on regular beds with a mattress, clean sheet or mattress and blanket. Under no circumstances will restrained inmates be placed on cots with holes in them;

(ii) Restraints may be used only on the specific written authorization of a medical doctor, and such authorization shall state in terms sufficient to enable a reasonable person to understand why the restrained inmate is believed to be dangerous to himself or others;

(iii) If required in an emergency situation, when a doctor is not present, a registered nurse may order the temporary use of restraints, subject to the receipt, by telephone or otherwise, of approval from a medical doctor within two hours of the imposition of such restraints;

(iv) A separate log shall be kept reflecting the use of restraints, the time of such approval and the reason therefore as set forth in subparagraph (ii) hereof;

(v) Orders by a doctor authorizing the use of restraints are valid for twenty-four hours only, and if no further written order has been entered within that period, the inmates shall be released from restraints.

20. Any use of cots with holes cut in them for the passage of human waste is prohibited.

21. Any person suffering from delirium tremens shall never be housed in the jail but shall be immediately transferred to an appropriate medical facility until recovered from said delirium tremens.

## X.

### Double Lock Cells

22. The following conditions of confinement shall apply to inmates in double lock cells:

(i) They shall be permitted to bring to double lock: soap, a toothbrush and toothpaste, a towel, blanket and sheet which shall be laundered and redistributed on a weekly basis;

(ii) They shall be permitted to have a change of clothing and the same laundry service as all other inmates;

(iii) All double lock cells shall be equipped with the same type cots as are in the regular cells in the jail;

(iv) Food trays shall be removed from double lock promptly after each meal.

23. With respect to the disciplinary proceedings the following conditions shall apply:

(i) Inmates who are subjected to disciplinary proceedings shall be given written notice of the charges a reasonable period of time in advance of their scheduled appearance before the Disciplinary Board;

(ii) In all cases where an inmate is sentenced to double lock, the jail Disciplinary Board shall prepare a written statement summarizing the evidence relied upon and the reasons for its decision.

## XI.

### Isolation Cell

24. With respect to the use of the isolation cell, the following conditions shall apply:

(i) Inmates shall not be placed in the jail's isolation cell as punishment for infraction of jail rules;

(ii) Inmates who are placed in the isolation cell shall not be stripped of their clothing; however, their shoes and belts may be removed in the interest of their personal safety;

(iii) The isolation cell shall be equipped with a toilet and a bed. Inmates who are confined to the cell shall be furnished a blanket and a sheet. The isolation cell shall be adequately heated during cold weather and adequately ventilated at all times. The isolation cell shall have interior lighting which can be controlled from the inside of the cell. The door which fronts the isolation cell shall be partially transparent so that guards can observe the inmate and the inmate see out. The cell shall be checked at least every fifteen minutes. No inmate shall be kept in the isolation cell more than two hours without the express consent of the warden or his designated representative. A separate log book shall be kept reflecting the circumstances surrounding the placement of anyone in the isolation cell.

## XII.

### Psychiatric Training for Nurses

25. The defendants shall, by January 1, 1979, arrange for a training program for present and future jail nurses in the area of psychiatric nursing. All present jail nurses must enroll in the program as soon as it is established. All nurses employed by the jail in the future shall, within six months of their date of employment, complete said training course.

## XIII.

### Mail

26. With respect to the handling of mail the following conditions shall apply:

(i) All outgoing mail may be sealed by the inmate before being deposited in the mailbox. Outgoing mail may be inspected for contraband by mechanical or other devices but may not be opened by jail personnel unless there is reasonable cause to believe it contains contraband, in which case a log shall be kept of the name of the sender, date, time and re-

sults of the search. If no contraband is found, the letter shall immediately be resealed and sent to its addressee;

(ii) There shall be no limitation on the number of pages contained in an outgoing letter;

(iii) Incoming mail may be opened only for the purpose of searching for contraband. Such mail may not be read by anyone without the consent of the addressee;

(iv) Incoming mail with a return address indicating that it is from a judge or an attorney must be opened in the presence of the inmate-addressee;

(v) The policy of requiring inmates to receive printed matter directly from the publishers shall be discontinued. Hereafter, inmates shall be permitted to receive books, magazines, and other reading material from any source so long as the publication has not been determined by the courts to violate postal regulations.

## XIV.
### Law Library

27. The defendants shall establish and keep updated a limited law reference library which shall be available for daily inmate use and shall include:

a. Federal Rules of Civil Procedure;

b. Federal Rules of Criminal Procedure;

c. Pennsylvania Rules of Court;

d. A complete set of Purdon's Pa. Statutes Annotated;

e. A complete set of United States Code Annotated;

f. Black's Law Dictionary;

g. Pennsylvania Appellate Court Reporters (beginning no later than the year 1955, including Atlantic 2d Series);

h. Federal Case Reporters including Federal Supplement, Federal Reporter 2d Series, and the Lawyers Edition of the Supreme Court Reporter (all beginning no later than the year 1955);

i. Federal Practice Digest 2d Series (all volumes relating to civil rights, the U.

S. Constitution, criminal law, and habeas corpus);

j. Vales Pennsylvania Digest (all volumes relating to civil rights, the Pennsylvania Constitution, criminal law, and family law and habeas corpus);

k. Shepard's United States Citations;

l. Shepard's Federal Citations;

m. Shepard's Pennsylvania Citations;

n. *Criminal Law in a Nutshell.* Israel, Jerold H. and Wayne R. LaFave. West Publishing Co., 1975;

o. *Complete Manual of Criminal Forms, Federal and State.* Bailey, F. Lee and Henry Rothblatt. Lawyers Co-op Publishing Co., 1974. 2 volumes;

p. *Legal Research in a Nutshell.* (2nd ed.) West Publishing Co.;

q. *Post Conviction Remedies in a Nutshell.* Popper, Robert. West Publishing Co.;

r. *Constitutional Rights of the Accused: Pre-Trial Rights* (1972). *Trial Rights.* (1974) *Post Trial Rights.* (1976) Cook, Joseph. Lawyer's Co-op Publishing Co.

## XV.
### Juvenile Records

28. The defendants shall keep all records and files, including fingerprint information, of juvenile inmates separate from the records and files of adults. A juvenile inmate's file may be inspected only as allowed under Pennsylvania law.

## XVI.
### Building Evacuation Plan

29. The jail administration shall maintain and keep current a building evacuation plan to be used in the event of fire or other emergency.

## XVII.
### Inspection by Court Advisor

30. In the month of March, 1979, or as soon thereafter as practicable, the Court

Advisor, Arnold E. Pontesso, shall inspect the jail to ascertain that this Order is being complied with and review all written plans required by this Order. The defendants shall pay the travel and other reasonable expenses of Mr. Pontesso and compensation at the rate of $135 per day, not to exceed five days.

## XVIII.

### Damages

31. Judgment is entered in favor of the defendants and against the plaintiffs in connection with the claim for money damages by the plaintiffs in the case at No. 75–412.

## XIX.

### Costs

32. Defendants shall pay all costs.